MILAGROS VEGA OLIVER, Plaintiff and Appellee, v. JOSÉ CA-
SANOVA CINTRÓN, Defendant and Appellant. IN RE JOSÉ
CASANOVA CINTRÓN, Respondent (Contempt Proceedings).

No. 9013. Argued May 10, 1945.—Decided July 6, 1945.

Lionel Fernández Méndez and Juan A. Faría for respondent-
appellant. R. A. Gómez, Prosecuting Attorney (Fiscal), and
Luis Negrón Fernández, Assistant Prosecuting Attorney, for The
People.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Luis E. Dubón, plaintiff's attorney in this divorce suit,
was assaulted by defendant José Casanova Cintrón, on Te-
tuán Street, in front of the Banco Popular Building where
Dubón has his office. The District Attorney of San Juan
then filed, within the divorce suit, a complaint against Ca-
sanova praying that he be summoned to show cause why he
should not be punished for contempt of court. The order
was issued, and, after a hearing, the lower court found the
defendant guilty and sentenced him to serve fifteen days in
jail and to pay a fine of $50. The defendant thereupon ap-
pealed, and he contends that the lower court erred in over-
ruling the demurrer wherein he alleged that the complaint
was insufficient, in deciding that the conduct of the defendant
constituted contempt, and in holding that the assault was
committed by the defendant in order to threaten, obstruct,
and prejudice the proper administration of justice.

The complaint alleged, in short, that in the divorce suit pending before the lower court, the defendant had denied in his answer that there was no conjugal property, but contended on the contrary that, among other things, there were 60 shares of stock of R. Vega e Hijos, Inc., approximately worth $20,000; that in the course of the divorce suit there arose the purchase of 30 of those shares by Ramón Vega, Jr., which were recorded in the name of the defendant for $11,000, of which amount the purchaser would retain $279.00 to cover a debt of the defendant; that Vega delivered the said price, that is a check for $10,720.14, in favor of defendant to Attorney Luis E. Dubón, and that said attorney, considering the provisions of § 101 of the Civil Code, was of the opinion, and so advised his client, that she should obtain authorization of the court to carry into effect the transaction and that the proceeds should be deposited in court; that Attorney Luis E. Dubón discussed the matter with defendant's counsel, Attorney Juan A. Faría, and submitted a stipulation for his consideration to be signed by both attorneys wherein the facts outlined above were stated and the check was to be deposited in court; that Attorney Faría did not give his consent to the stipulation and returned the same with the check to Dubón; that Attorneys Dubón and Faría thereafter continued to discuss the matter, and that during these discussions and before reaching a final decision, on April 4, 1944, the defendant unlawfully, and with the purpose of causing serious injury to Attorney Luis E. Dubón, wilfully and maliciously assaulted and battered said Luis E. Dubón on Tetuán Street, in front of Banco Popular Building where Attorney Dubón has his office. The complaint closes with the allegation that " . . . said assault and battery was committed by defendant José Casanova Cintrón upon the person of Attorney Luis E. Dubón because of his connection with and conduct of the proceedings in said case

in behalf of plaintiff Milagros Vega Oliver in the aforesaid civil case No. R–1164, and as her attorney in said case.

"14. That the act committed by the defendant tended to disparage and undermine the respect, dignity, and authority of this court; that it tended to interfere with the power and duty of this court to safeguard and protect its offices from intimidation, duress, violence, or assault which might be intended or committed against them by reason of or as a consequence of the discharge of their duties; and that it tended to obstruct the proper administration of justice by force and violence and to assail every citizen's right to appear before the courts to support and defend their rights under the law in a lawful and correct manner."

Appellant urges that assuming that the assault committed by the defendant on plaintiff's attorney took place in the manner alleged in the complaint, that act did not constitute contempt inasmuch as it did not take place in the presence of the court but at a considerable distance from the building where it is located.

Subdivision 1 of § 1 of the Contempt Law, as amended by Act No. 102 of 1937 (Laws of 1937, p. 241). prescribes what shall constitute contempt:

"1. Breach of the peace, noise, or other disturbance directly tending to interrupt its proceedings, or disorderly, contemptuous or insolent conduct towards a court or a justice thereof, or the Industrial Commission of Puerto Rico constituted by all or some of its members, in its presence or during its session and tending to interrupt its proceedings, or in the presence of a jury, while it is actually sitting or deliberating in any case."

In *People* v. *Valldejulli,* 59 P.R.R. 117, 126, we stated that this subdivision defined three different types of contempt, to wit:

". . . (a) The physical act of breaching the peace, making noise or any other disturbance directly tending to interrupt the proceedings; (b) disorderly, contemptuous, or insolent conduct towards a court or justice thereof, *in its presence,* and tending to interrupt

its proceedings; and (c) disorderly, contemptuous or insolent conduct towards a court or justice thereof, *during its session,* and tending to interrupt its proceedings.

And we held that type (b) of the statute does not require that the act constituting disorderly, contemptuous, or insolent conduct towards the court be committed in the presence thereof during its session, but that it only requires that said act be committed "in the presence of the court," and that the acts charged therein against the respondent were carried out "in the office of a justice of this court, while the latter was in the discharge of his duties, and the report made by respondent to said justice for transmission to the court, was closely connected with a proceeding pending before the court and in which respondent acted as the legal representative of one of the parties." and, therefore, that the complaint was sufficient to constitute contempt since the report made constituted contemptuous and insolent conduct towards the court.

In regard to considering an assault as constituting contempt, we have studied and decided this question in two previous cases. In *People* v. *Torres,* 56 P.R.R. 578, where the contempt consisted of an assault and battery upon the person of the district judge, which act was committed in the hall of the court after it had adjourned and when the judge was leaving his office, it was held that since the act did not take place while the court was in session, and since the order issued against the respondent did not disclose the motive for the assault or whether the same was connected with any work of the court in general or with the particular case under consideration, the contempt was indirect or constructive.[1] The other case, *In re Castro,* 52 P.R.R. 133, wherein the assault was committed on an attorney outside the iron fence which separates the court from the other agencies

---

[1] This case, to which we shall hereafter refer, was decided by a divided court, three out of five justices voting for affirmance.

located in the Insular Capitol and after the court had adjourned, but while the judges were assembled in the conference room, we held:

"From the foregoing it is clear that the assault was made not only against an attorney who had just addressed the Court in a judicial matter entrusted to his defense, but also as the result of his address and as a punishment for the same, within the court building and while the judges were assembled in the conference room.

"The contempt to the Court is therefore manifest. The disturbance of the peace tending directly to interrupt the quiet consideration of the judicial matter which had been submitted to the decision of the Court, and the unlawful and violent attack upon the person of an officer of this Court, within or at least in the inner threshold of its premises, as the result of his duties, are clear. And the Court possesses under the law as well as inherently the power and the duty to punish it. Section 145 of the Penal Code. Section 7 of the Code of Civil Procedure, 13 C. J. 46.

.·* * * * * * *

"Regarding the contention that the session of the court had already terminated and that the assault took place beyond the railing which marks the exact entrance to the court, and that the latter did not see the assault, nor heard the words uttered by the defendant it will suffice to say that weighing together all the attendant circumstances the conclusion is unavoidable that the contempt was committed, which contempt it is known may be direct or constructive. 13 C. J. 5."

The facts alleged in the complaint in the case at bar are substantially different from those which gave raise to the decisions in the cases of Castro and Torres, *supra*. The assault on the attorney in the *Castro* case took place within the court premises, after the court had adjourned and while the judges were assembled in conference, and the motive for the assault was the oral argument which shortly before had been presented by the attorney in a case which had been submitted to the consideration and decision of the court. And in *People* v. *Torres,* the assault was committed on the judge

in the hall of the court during an adjournment and while the jury was deliverating. In both cases, even though indirectly or constructively, the assault was considered as a contempt committed in the presence of the court.

In the case at bar, however, even though it is alleged in the complaint that a divorce suit was pending in the lower court, in which action Attorney Dubón acted as plaintiff's attorney, and that defendant, respondent-appellant herein, assaulted him on the street in front of the building where Attorney Dubón has his office, at a considerable distance from the building of the district court, because he had refused to deliver a check issued by Ramón Vega, Jr., in favor of the defendant, in payment of some shares which defendant had sold to Vega, we do not see how this act on the part of respondent may be considered as "disorderly, contemptuous or insolent conduct" towards the lower court and as having been carried out "in its presence" and "tending to obstruct its proceedings," for the following reasons:

1. It is true that the divorce suit was pending before the lower court, but there was nothing pending in connection with the alleged sale of defendant's shares. The stipulation, prepared by Attorney Dubón, at no time accepted or signed by defendant's attorney, was never filed in the court. In so far as the court was concerned, it knew nothing of said stipulation nor of the sale of the shares, and therefore nothing was pending decision in connection therewith. In addition, the shares, as alleged in the complaint, belonged to the defendant and they were sold by him to Mr. Vega. Notwithstanding this, the check in payment of those shares was delivered, not to the defendant or his attorney, but to plaintiff's attorney. Why did Mr. Vega do this? We do not know. Attorney Dubón, without having to obtain a stipulation signed by the attorneys of both parties, could have deposited the check by way of a motion and have submitted

the matter to the court. However, he chose to discuss it extrajudicially with defendant's attorney who refused to sign it[2] and shortly thereafter he was assaulted by the defendant, as alleged in the complaint, "because of his connection with and conduct of the proceedings" in the divorce case, "in behalf of plaintiff in the aforesaid case." In what manner did attorney Dubón represent the plaintiff when he received the check issued by Vega in favor of Casanova? Why did not Mr. Vega deliver this check to defendant or to his attorney? Why, we repeat, was not this check deposited in court? In the allegations of the complaint we find no answer to this question.[3] So that in connection with the incident related to the sale of the shares, there was nothing pending before the court and we do not see how the act of the respondent could have tended "to obstruct proper administration of justice by force and violence", as alleged in the complaint.

2. Assuming, for the sake of argument, that the steps taken in connection with the sale of defendant's shares to Vega and with the stipulation and deposit of the check and the discussions that Attorney Dubón had with Attorney Faría, could be considered professional steps taken by Attorney Dubón as counsel for plaintiff in the divorce suit, as alleged in the complaint, we would always have before us the principal question involved in this case, to wit, did the assault committed by the defendant on Attorney Dubón take place in the presence of the court? Did said conduct tend to obstruct the proceedings of the court? Both questions require a negative answer.

---

[2] According to the evidence, this refusal was due to the fact that defendant's attorney insisted that it should appear from the stipulation that there were thirty other shares of R. Vega e Hijos, Inc., in the name of the plaintiff acquired during marriage.

[3] However it appears from Attorney Dubón's testimony at the trial that he was and had been for many years the attorney for the firm R. Vega e Hijos, Inc.

*In re Castro,*[4] and *People* v. *Valldejulli, supra,* are distinguishable from the case at bar.

As to *People* v. *Torres, supra,* as we previously indicated in footnote (1), this case was decided by a three to two vote of a divided court. However, at present, of the judges who took part in that case, there remain as members of this court only the two dissenting judges that is, Mr. Justice (now Chief Justice) Travieso and Mr. Justice De Jesús. As Mr. Justice Snyder and the writer agree with the dissenting opinion, and we all agree that the assault in said case was not committed "in the presence" of the court, the same should be considered as expressly overruled.

The scope of the words "in the presence of the court" contained in statutes on contempt has been strictly limited by the decision in *Nye* v. *United States,* 313 U. S. 33, which is analized in part in our opinion in *People* v. *Valldejulli, supra.* The Supreme Court of the United States held that words "so near thereto" contained in the phrase "in its presence or so near thereto as to obstruct the administration of justice" used in § 288 of the United States Judicial Code (28 U.S.C.A. § 385) are to be construed as having a geo-

---

[4] The cases of *U. S.* v. *Barret,* 187 Fed. 378 and *Ex parte McLeod,* 120 Fed. 130, cited with approval in *In re Castro,* stated facts especially the former, which justified the conclusion that the contempt had been committed in the presence of the court. In the former case, although plaintiff's attorney was assaulted in the street, the act took place in front of the room where the jury, which participated in the case, was deliberating and in the plain and open view of said jury. This situation is also expressly covered by our statute which provides that it shall constitute contempt "disorderly conduct. . . in the presence of a jury, while it is. . . deliberating in any case." In the latter case the assault was committed on a Commissioner of the court while in the discharge of his duty, it being held that "As courts can exercise judicial functions only through their judicial officers, an assault upon a judicial officer because he has discharged a judicial duty is necessarily an attack upon the court, for what it has done in the administration of justice." However, see a criticism of this case in Nelles & King, Contempt by Publication in the United States, 28 Col. L. Rev. 525, 539, cited in *Nye* v. *United States,* 313 U. S. 33, 51, note (18).

graphical rather than a causal connotation, and added: ''It is not sufficient that the misbehavior charged has some direct relation to the work of the court. 'Near' in this context, juxtaposed to 'presence,' suggests physical proximity not relevancy. . . . There may, of course, be many types of 'misbehavior' which will 'obstruct the administration of justice' but which may not be 'in' or 'near' to the 'presence' of the court."[5] Thus the United States Supreme Court did not give a new construction to said phrase, but it reverted to the original construction given by the Federal courts and at the same time corrected the historical error committed in its construction in the well-known case of *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402,[6] which was expressly overruled, thus eliminating the rule established therein that said phrase could embrace acts which had a ''reasonable tendency'' to ''obstruct the administration of justice.'' on The other hand, it restricted it to acts taken place in the vicinity of the court.

A few months after the decision of *Nye* v. *United States,* the Supreme Court of the United States made the meaning of constructive contempt still clearer (the sending of a telegram commenting on a decision and the publication of some editorials) and, in rejecting the rule of ''reasonable tendency'' it applied the doctrine of ''clear and present danger'' and ''that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished.'' *Bridges* v. *California,* 314 U. S. 252, 261.

These two cases have been cited with approval by legal

---

[5] In *People* v. *Valldejulli, supra,* the doctrine of the *Nye* case was not applied because the conclusion was reached that the acts charged took place in the presence of the court and in connection with a case submitted for its consideration.

[6] *Nye* v. *U.S.,* p. 47, citing Frankfurther & Landis, Power of Congress Over Procedure in Criminal Contempts in Inferior Federal Courts. A Study in Separation of Powers, 37 Harv. L. Rev. 1010.

commentators [7] because, due to the doctrine established therein, they have put a stop to many injustices and abuses committed in the past under the pretext of the inherent power [8] to punish indirect or constructive contempts. Criminal laws afford a broad field to embrace any act which, although not having taken place in open court or in the presence of the .court, with the restricted meaning now applied to "in presence," deserves punishment in the ordinary course by a criminal proceeding.

We are of the opinion that the doctrine laid down in the *Nye* case, *supra,* is clearly applicable to the facts in the present case. The act of respondent Casanova did not take place in the presence of the lower court nor did it tend to obstruct its proceedings.[9] The court erred in overruling the demurrer and consequently the judgment appealed from should be reversed and another rendered acquitting the respondent.

---

[7] See 54 Harvard Law Rev. 1397; 36 Ill. L. Rev. 471; 90 U. of Pa. L. Rev. 104; 30 Col. Law R. 577; 17 Tulane Law Rev. 121; The Supreme Court in Freedom of the Press and Contempt by Publication by Elisha Hanson in 27 Cornell Law Quarterly 165; Freedom of the Press in Prospect and Retrospect by Leon R. Yankwich in 15 So. Cal. L. Rev. 322, and the same Review at p. 367.

[8] For a discussion of this power, see *Frankfurter & Landis, op. cit.,* Nelles & King, Contempt by Publication in the United States, 28 Col. L. Rev. 525.

[9] The allegations contained in paragraph 14 of the complaint, *supra,* are entirely different from the types expressly and specifically contained in our statute on contempt and they are in great part mere conclusions.